**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

-----------------------------------------------------------x
                                                :

STATE OF ALABAMA,                                   :

                     *Plaintiff*,               :

              v.                                   :

VOLKSWAGEN AG; AUDI AG;                             :
VOLKSWAGEN GROUP OF AMERICA, INC.                  :
(d/b/a VOLKSWAGEN OF AMERICA, INC.);               Case No. _____
AUDI OF AMERICA, LLC; DR. ING. H.C. F.             :
PORSCHE AG; and PORSCHE CARS NORTH                 :
AMERICA, INC.,                                     :

                    *Defendants*.              :
                                                  :
                                                  :
-----------------------------------------------------------x

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446, defendants Volkswagen AG ("VWAG"); Audi AG ("Audi AG"); Volkswagen Group of America, Inc. (d/b/a Volkswagen of America, Inc.) ("VWGoA"); Audi of America, LLC ("Audi America"); Dr. Ing. h.c. F. Porsche AG ("Porsche AG"); and Porsche Cars North America, Inc. ("PCNA") (together, "Defendants") hereby notice the removal of this civil action brought by the State of Alabama ("Alabama") from the Circuit Court of Jefferson County, Alabama, Tenth Judicial Circuit, Birmingham Division, to the United States District Court for the Northern District of Alabama.  The action being removed is titled *State of Alabama* v. *Volkswagen AG et. al.*, Dkt. No. 01-cv-2016-903390.00 (Cir. Ct.,

Jefferson Cnty.) (the "Action").  Removal to the Northern District of Alabama is proper because it is the District within which the Action was filed.  *See* 28 U.S.C. § 1446(a).

This Court has subject matter jurisdiction—and this matter is therefore removable—because Alabama raises claims and a right to relief that depend upon the resolution of disputed and substantial questions of federal law, including novel questions under the federal Clean Air Act ("CAA") and the regulatory scheme promulgated thereunder by the United States Environmental Protection Agency ("EPA").  *See* 28 U.S.C. §§ 1331, 1441(a); *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005) (action to quiet title under state law "warrant[ed] federal jurisdiction" where "the meaning of [a] federal [notice] statute [was] actually in dispute").    Although the CAA reserves authority to set and enforce new-car emissions standards to the federal government and the state of California (and states which formally adopt California's standards), Alabama seeks to end-run this federal scheme —and to penalize Defendants for alleged violations of federal law—by alleging that Defendants tampered with emissions control systems when the vehicles were manufactured and designed.  Whether a state anti-tampering law can so penalize new-car manufacturers is squarely a matter of federal law.

That the complaint raises substantial and disputed issues of federal law with national import is reflected by the United States Judicial Panel on Multidistrict Litigation's (the "JPML") transfer to the Honorable Charles Breyer in the U.S. District Court for the Northern District of California (the "MDL") of more than 1,100 cases filed against many of the same defendants as here, alleging similar or overlapping claims, based on the same underlying alleged facts.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 148 F. Supp. 3d 1367 (J.P.M.L. 2015).  These cases include claims under the CAA asserted by the United States

Department of Justice (on behalf of the EPA); claims asserted by the States of California, Kentucky, Massachusetts, Maryland, New Mexico, New York, Oklahoma, and Pennsylvania under their state environmental or consumer protection laws; claims asserted by other federal and state governmental parties; and claims of numerous private parties asserting claims under a variety of federal and state laws.  Concurrent with filing this Notice of Removal, Defendants are filing a request with the JPML to transfer this action to the MDL so that this action may be adjudicated with the many similar cases pending in the MDL, in order to "promote the just and efficient conduct of the litigation," including by "eliminat[ing] duplicative discovery, avoid[ing] inconsistent rulings . . . , and conserv[ing] the resources of the parties, their counsel and the judiciary."  *Id.* at 1368-69.

At the heart of the Action are legal questions concerning compliance with emissions standards for new motor vehicles—a matter declared by the CAA to be an exclusively federal concern.  42 U.S.C. § 7543(a).[1]  In particular, the Action concerns the existence and implications of "defeat devices"—a term defined *only* by EPA regulation and *not* by any state regulation—in certain diesel vehicles, which allegedly caused those vehicles to pass emissions tests but to emit excessive nitrogen oxides and other pollutants while in normal vehicle operation and use.  (*See*, *e.g.*, Complaint ("Compl.") ¶¶ 2, 46-47, 53-54, 56, 72(d).)

In this Action, Plaintiff seeks to disrupt the federal statutory scheme.  Plaintiff demands penalties under *Alabama* anti-tampering law for manufacturing and selling vehicles that were

---

[1]      The CAA creates only one exception to total federal control:  California and states that enact emissions regimes "*identical*" to California's may adopt their own standards and enforcement procedures, 42 U.S.C. § 7507, if the EPA "determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards."  42 U.S.C. § 7543(b)(1).  This exception is not implicated in the instant action because Alabama has not adopted standards identical to California.

allegedly designed to include *federally* regulated "defeat devices."[2]  In so doing, Plaintiff is attempting to enforce a federal or state standard relating to new motor vehicle emissions, which is plainly prohibited by the CAA.  *See*  42 U.S.C. § 7543(a).  Moreover, the statute under which Alabama brings suit allows the State to seek to enjoin any threatened violation of the Alabama Air Pollution Control Act ("AAPCA").  Ala. Code § 22-22A-5(19); *see also* Compl., Prayer for Relief ¶ 3 (seeking all "[o]ther relief under state law . . . deem[ed] just and appropriate").  An injunction obtained by Alabama from an Alabama state court, could effectively give Alabama the power to tell Defendants how to design their vehicles—all in violation of the federal CAA, which provides that no state "shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale."  42 U.S.C. § 7543(a).

The Action presents several federal questions, any one of which is sufficient to convey federal question subject matter jurisdiction:  (1) whether Alabama's enforcement of the anti-tampering provisions of the AAPCA impermissibly seeks to enforce a federal or state standard relating to new motor vehicle emissions contrary to Section 209 of the CAA, thereby threatening to require manufacturers to create a motor vehicle that differs from motor vehicles certified under federal or California standards; (2) whether the "other relief" sought by Plaintiff is permissible under Section 209 of the CAA; and (3) to the extent Defendants' vehicles contained

---

[2]     Federal regulations define a "defeat device" as "an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, unless:  (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles[.]"  40 C.F.R. § 86.1803-01.

"defeat devices," as defined by federal law and made unlawful by federal regulations, the legal consequences to Defendants for the existence of such devices in their vehicles.

These substantial federal questions are highly novel, and it is thus imperative that they be litigated in federal court. The Action and other actions filed by Maryland, Massachusetts, New Hampshire, New York, Pennsylvania, Vermont, and Tennessee (together with Alabama, the "States") around the same time and based on substantially the same allegations (together with the Action, the "State Actions") collectively represent one of the first instances, if not the first instance, in which a state other than California has sued and sought monetary and injunctive relief based on alleged violations of state-law emissions and environmental standards for new motor vehicles.

Once this Action is in federal court, it should be transferred to Judge Breyer of the Northern District of California, who already has before him more than 1,100 lawsuits, including suits brought by the Attorneys General of California, Kentucky, Massachusetts, Maryland, New Mexico, New York, Oklahoma, and Pennsylvania, relating to the same nucleus of operative facts. Transfer to Judge Breyer would allow the important federal issues raised by these cases to be resolved in a single forum, avoiding the risk of inconsistent piecemeal rulings by different courts. To that end, Defendants and Alabama (and the other States) have reached an agreement under which Defendants will remove the State Actions to federal court and the States will not object to the transfer of the State Actions to the MDL for centralized adjudication of the issue of removal, which will involve similar inquiries in each of the State Actions.

## I.   BACKGROUND

### A.   PARTIES

The named Plaintiff is the State of Alabama, by and through the Attorney General of the State of Alabama.  (Compl. ¶ 7.)

VWGoA is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  VWGoA is a wholly owned subsidiary of VWAG.

VWAG is a German corporation with its principal place of business in Wolfsburg, Germany.  VWAG is the direct parent corporation of VWGoA and Audi AG, and the indirect parent corporation of Porsche AG.

Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany.

Audi America is a Delaware limited liability company with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. Audi America is a wholly owned subsidiary of VWGoA.

PCNA is a Delaware corporation with its principal place of business located at 1 Porsche Drive, Atlanta, Georgia 30354.  PCNA is an indirect wholly owned subsidiary of Porsche AG.

Porsche AG is a German corporation with its principal place of business in Stuttgart, Germany.  Porsche AG is the parent of PCNA and is an indirect wholly owned subsidiary of VWAG.

The Defendants filing this notice of removal do so without waiving any defenses, including as to personal jurisdiction.  *See*, *e.g.*, *Morris & Co.* v. *Skandinavia Ins. Co.*, 279 U.S. 405, 409 (1929) (rejecting argument that "by removal of the case to the federal court, objection to jurisdiction over the person of respondent was waived"); *Cantor Fitzgerald, L.P.* v. *Peaslee*, 88 F.3d 152, 157 n.4 (2d Cir. 1996) (rejecting argument that removal waived personal jurisdiction objection because "[r]emoval does not waive any Rule 12(b) defenses"); *see also* 5C Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1395 (3d ed. 2015) ("A party who

removes an action from a state to federal court does not thereby waive any of his or her Federal 12(b) defenses or objections.").

### B.        PROCEDURAL HISTORY

On September 15, 2016, Plaintiff filed this action in the Circuit Court of Jefferson County, Alabama, Tenth Judicial Circuit, Birmingham Division, bearing docket number 01-cv-2016-903390.00.   The Complaint names six defendants: VWGoA, VWAG, Audi AG, Audi America, Porsche AG, and PCNA.

Defendants were served with the Complaint on October 3, 2016.  This notice of removal is being filed on October 14, 2016, which is less than 30 days after any of those Defendants were served.  As a result, this notice of removal is timely filed.  *See* 28 U.S.C. § 1446(b) ("The notice of removal . . . shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . ."); *Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

Copies of the state-court docket and the pleadings in this Action are attached hereto as Exhibits A-B.[3]  Other than these documents, no pleadings, process, orders, or other documents in the case have been served on Defendants or, to their knowledge, are presently on file in the state court.  Should such filings come to Defendants' attention, true and legible copies will promptly be filed with this Court.

---

[3]      The state court docket includes several documents which have not been served upon Defendants.  The state court complaint, attached hereto as Exhibit A, is the only document that has been served upon Defendants.

Defendants are serving written notification of this Notice of Removal on Plaintiff's counsel and are filing a Notice of Filing of Notice of Removal (attaching a copy of this Notice of Removal) with the Clerk of the Circuit Court of Jefferson County, Tenth Judicial Circuit, Birmingham Division.

### C.     PLAINTIFF'S CLAIMS

This Action is based upon allegations concerning widely publicized Notices of Violation issued by the EPA on September 18, 2015 and November 2, 2015.  These EPA Notices alleged installation of emissions-testing "defeat devices" in certain diesel vehicles sold by Defendants. "Defeat devices" are defined by federal law (and only federal law) as devices that "reduce[] the effectiveness of the emissions control system under conditions that may reasonably be expected to be encountered in normal vehicle operation and use."  40 C.F.R. § 86.1803-01.  The Complaint uses the term "defeat device" more than 50 times, and contends that Defendants misled "state and federal regulators" by deploying and concealing these "defeat devices." (Compl. ¶ 72(d).)  But the cited Alabama regulations do not mention, define, or prohibit "defeat devices"—a term defined solely by federal law.

The Complaint alleges that Defendants' conduct was broadly directed toward the U.S. automotive market—of which Alabama is a tiny fraction.  For example, Plaintiff contends that vehicles with "defeat devices" were "designed and developed . . . for marketing and sale throughout the U.S., including Alabama" (Compl. ¶ 26), and that "certification-related submissions" were made to "state and federal regulators" for certification required to sell or lease the vehicles in the U.S., including within Alabama (Compl. ¶ 72(d)).  Fewer than 1% of such vehicles in the United States were sold or leased in Alabama.  (*See id*. ¶ 5 (about 4,600 of the roughly 588,000 such vehicles sold or leased in the U.S. were sold or leased in Alabama).)

Plaintiffs across the nation have already filed more than 1,100 actions against various of the Defendants based on similar allegations and theories.  These actions include numerous individual and class actions, as well as actions filed by federal, state and other governmental bodies, including the Attorneys General of California, Kentucky, Massachusetts, Maryland, New Mexico, New York, Oklahoma, and Pennsylvania.  All eight of those Attorney General actions are currently pending in the MDL in federal court in the Northern District of California.[4]

On December 8, 2015, the JPML issued an order transferring hundreds of then-pending actions to the MDL for coordinated and/or consolidated pre-trial proceedings.  In its order, the JPML stated, "the actions in this litigation involve common questions of fact, and . . . centralization in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 148 F. Supp. 3d at 1368.  Subsequently filed actions have also been transferred to the MDL.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 15-md-02672, Dkt. No. 1716 (J.P.M.L. June 2, 2016).  Among other cases, the JPML transferred to the MDL an action by the State of New Mexico, despite New Mexico's pending motion for remand, because the state's action was "based upon the core factual questions of [the MDL] – VW's conduct in installing defeat devices

---

[4]     Although certain actions brought by State Attorneys General have been remanded to state court, they have no bearing on the issues here.  Even putting aside whether it was correctly decided, *Lougy* v. *Volkswagen Group of America, Inc.*, 2016 WL 3067686 (D.N.J. May 19, 2016), did not address whether federal question jurisdiction would be implicated if New Jersey sought to enforce state-law procedures and penalties addressing the design of motor vehicles prior to their initial retail sale.  Although an Arizona district court also remanded an action brought by the Arizona Attorney General, that action concerned claims brought under consumer protection statutes, and the Court's conclusion that "Arizona could prevail even if the federal law, regulation and standards had never existed" does not apply here, where the state claims implicate the design of motor vehicles prior to initial retail sale.  *See Brnovich* v. *Volkswagen AG*, No. 2:16-cv-01426, Dkt. No. 35, at 5 (D. Ariz. June 23, 2016).

in over 500,000 of its diesel vehicles." *Id.* at 2. As the JPML later held in connection with Kentucky's opposition to transfer, "[g]iven the overlapping factual issues and the potential for inconsistent or duplicative rulings on common issues, transfer is appropriate." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 15-md-02672, Dkt. No. 1949 at 2 (J.P.M.L. Aug. 5, 2016) (transferring action by the Commonwealth of Kentucky to the MDL); *see also Pruitt* v. *Volkswagen AG*, No. 16-cv-759, Dkt. No. 39 at 1 (W.D. Okla. Aug. 25, 2016) ("[T]his case [brought by the State of Oklahoma], although alleging only state law issues, involves common questions of fact with other civil actions such that the Judicial Panel on Multidistrict Litigation should make the determination whether this case should be transferred to the MDL.").

Concurrent with the filing of this Notice of Removal, Defendants are seeking the transfer of this Action to the MDL in the Northern District of California. As discussed above, Plaintiff has agreed not to object to the transfer of this Action—as have the other States that have brought their own actions—so that any and all remand motions in these cases can be collectively determined by the MDL Court to reduce, if not eliminate, the risk of inconsistent conclusions on these novel and substantial questions of federal law. This approach should ensure consistency with the adjudication of many other dismissal and remand motions raising similar arguments and stemming from the same set of allegations. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 15-md-02672, Dkt. No. 1716 at 2 (J.P.M.L. June 2, 2016) ("The transferee judge can decide [New Mexico's] motion to remand, as in other cases."). Judge Breyer has ordered that "any motion for remand for actions . . . transferred to, or removed to, [the] Court [will] be considered in a coordinated and orderly fashion after the final approval hearing [in October 2016] regarding the Class Action Settlement Agreement." *See In re*

*Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 3:15-md-02672-CRB, Dkt. No. 1643 at 1-2 (N.D. Cal. July 7, 2016).[5]

## II.     BASIS OF FEDERAL QUESTION JURISDICTION

This Action arises under federal law within the meaning of 28 U.S.C. § 1331 and falls within the original federal question jurisdiction of the federal courts.

Even if a complaint is styled as arising under state law, federal courts look to whether the claim raises "a substantial question of federal law" to determine whether federal jurisdiction exists.  *See Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983) ("Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court . . . cases in which . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."); *see also*, *e.g.*, 13D Wright *et al.*, *supra* § 3562 (courts may "look beyond the law that created the claim being asserted to view the litigation reality in assessing whether there is a need for federal question jurisdiction").

The Supreme Court has long emphasized the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of

---

[5]     The Class Action Settlement is a settlement between Defendants and the owners and lessees of certain Volkswagen vehicles for which the MDL Court granted preliminary approval on July 26, 2016.  Under the Class Action Settlement and related settlements with the U.S. Federal Trade Commission, the U.S. Department of Justice, the U.S. Environmental Protection Agency, and the California Air Resources Board, Volkswagen will (i) create a $10.033 billion funding pool to compensate certain current and former owners and lessees of affected vehicles, (ii) pay $2.7 billion to fully remediate any excess emissions from the affected vehicles, and (iii) make an additional $2.0 billion in green investments.  A final fairness hearing is scheduled for October 18, 2016.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 3:15-md-02672-CRB, Dkt. No. 1698 (N.D. Cal. July 29, 2016).     Separately, Defendants have entered into a settlement agreement with Alabama and 42 other states and jurisdictions resolving certain of their claims, including for penalties under consumer protection laws.

uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312; *see also City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997) ("[e]ven though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States" if the "right to relief under state law requires resolution of a substantial question of federal law" (quoting *Franchise Tax Bd. of Cal.*, 463 U.S. at 13)).   "[F]ederal jurisdiction over a state law claim will lie if a federal issue is:   (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."   *Gunn* v. *Minton*, 133 S. Ct. 1059, 1065 (2013).

That standard is fully met here.   The federal issues here are necessarily raised and substantial.   As the Supreme Court recently reaffirmed, federal question jurisdiction is warranted when "a suit raising a state-law claim rises or falls on the plaintiff's ability to prove the violation of a federal duty."   *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Manning*, 136 S. Ct. 1562, 1569 (2016).   Courts have recognized, for example, that where "resolution of the dispute requires the interpretation and application of the [federal statute] to the contractual arrangement between the parties," it "is undoubtedly a federal question and . . . sufficiently substantial to justify invocation of federal-question jurisdiction."   *Ormet Corp.* v. *Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996); *see also Ayres* v. *Gen. Motors Corp.*, 234 F.3d 514, 518-20 (11th Cir. 2000) (Federal-question jurisdiction existed where "resolution of th[e] [state-law claims] depend[ed] entirely on interpretation of the federal mail and wire fraud statutes.")

*Ormet*, like this matter, involved state-law claims requiring interpretation of the CAA.   In reversing the district court and finding federal question jurisdiction, the Fourth Circuit recognized that "[w]here the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a

federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts." *Ormet,* 98 F.3d at 807.[6]

The federal interests here are even more substantial than in *Ormet*. The core emissions and environmental issues on which Plaintiff predicates its claims, *i.e.,* "defeat devices" in certain of Defendants' vehicles, are the subject of intense federal enforcement and federal litigation. When rejecting the Commonwealth of Kentucky's objections to transfer of its action to the MDL, the JPML recognized the importance of those issues being resolved in one forum, including to avoid inconsistent adjudications on matters of federal law:

> At its core, the action [to be transferred to the Northern District of California] is based upon the common factual questions of MDL No. 2672—VW's conduct in installing defeat devices in over 500,000 of its diesel vehicles.  Allowing this case to proceed separately would require a duplicative, and potentially inconsistent, decision on the core issue of VW's liability for the installation of the defeat devices.

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 15-md-02672, Dkt. No. 1949 at 2 (J.P.M.L. Aug. 5, 2016).

As discussed below, the federal CAA broadly prohibits any state (other than California) from adopting or attempting to enforce *any* standards for emissions of new vehicles, unless a state adopts and enforces standards *identical* to the EPA-approved California standards.   42 U.S.C. §§ 7507, 7543(a).  Alabama has not adopted California's emissions standards for new

---

[6]     Numerous courts have similarly recognized that federal question jurisdiction exists where state-law claims implicate a significant federal issue.  *See, e.g.*, *West Virginia* v. *Eli Lilly & Co.*, 476 F. Supp. 2d 230, 232 (E.D.N.Y. 2007) ("Federal question jurisdiction lies over claims that may sound in state law but implicate significant federal issues."); *Lehman Bros., Inc.* v. *City of Lodi*, 333 F. Supp. 2d 895, 906 (E.D. Cal. 2004) (denying remand where plaintiff's "contract-related claims have 'artfully pleaded' a federal question as state law claims"); *Menoken* v. *McNamara*, 213 F.R.D. 193, 197 (D.N.J. 2003) ("Because proof of a meritorious federal claim is an essential element of proximate causation and damages for each of his claims, the plaintiff's complaint presented a federal question . . . ."); *Chance* v. *Sullivan*, 993 F. Supp. 565, 567 (S.D. Tex. 1998) ("[T]he state claims are inescapably infused with . . . overriding federal concerns.").

vehicles and is thus prohibited from attempting to enforce any such standard. But Alabama nonetheless seeks to penalize Defendants, through the guise of a state anti-tampering law, for the design of the emissions systems of certain new vehicles.

Plaintiff alleges that "defeat devices" were installed in certain diesel vehicles Defendants sold in the U.S. market, which allegedly defrauded "state and federal regulators." (Compl. ¶ 72(d).) According to the Complaint, the subset of these vehicles that were sold, leased, or otherwise delivered into Alabama produced "real world $NO_x$ emissions that exceeded U.S. limits by many multiples" (*id.* ¶ 72(b)), and Defendants submitted unreliable and inaccurate data to regulatory authorities with respect to these and other vehicles (*id.* ¶ 72(d)).

The Complaint brings a single claim for violation of the AAPCA and its accompanying regulations. Specifically, the Complaint alleges that Defendants "[b]y installing . . . defeat device[s] on [the] subject vehicle[s] . . . caused or allowed the disconnection or disabling of the exhaust emissions control systems on subject vehicles," in violation of the AAPCA's anti-tampering provisions. (*Id.* ¶ 93; *see also id.* ¶¶ 87-97.)

Defendants have been working with the EPA and California under the supervision of the MDL court to fix any vehicles that may contain defeat devices, to mitigate the environmental impact of $NO_x$ emissions, and to promote zero-emission vehicles. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 3:15-md-02672-CRB, Dkt. No. 1642-1 (N.D. Cal. July 7, 2016); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 3:15-md-02672-CRB, Dkt. No. 1605-1 (N.D. Cal. June 28, 2016). Nonetheless, Plaintiff seeks civil penalties of $25,000 per violation per day for violations of its anti-tampering statute. (Compl. ¶ 97.) In short, Plaintiffs seek to use Alabama law to penalize the design and

emissions of new motor vehicles, even though the CAA commits any such enforcement to federal (and not state) authorities.

Defendants are aware of no precedent for a state (other than California) imposing monetary penalties or other remedies for violations of new-vehicle emissions standards. Permitting this Action, and parallel actions filed by other states, to proceed in state courts would lead to a patchwork regulatory regime antithetical to the CAA's carefully delineated scheme. This lawsuit thus presents substantial federal questions concerning the scope of the CAA, and the extent to which states other than California can bring independent actions seeking to impose a variety of penalties and remedies on new-car manufacturers, that should be resolved once, in federal court.

### A.  THE FEDERAL STATUTORY SCHEME

Federal law provides distinct roles for the federal government and the states in fighting air pollution.  The federal "CAA contemplated that the states would carry out their responsibility chiefly by regulating stationary sources, such as factories and power plants." *Engine Mfrs. Ass'n* v. *EPA*, 88 F.3d 1075, 1078-79 (D.C. Cir. 1996).  But "[i]n contrast to federally encouraged state control over stationary sources, regulation of motor vehicle emissions ha[s] been a principally federal project." *Id.* at 1079.  "The regulatory difference is explained in part by the difficulty of subjecting motor vehicles, which readily move across state boundaries, to control by individual states." *Id.*  Perhaps more importantly, "the possibility of 50 different state regulatory regimes 'raised the spectre of an anarchic patchwork of federal and state regulatory programs, a prospect which threatened to create nightmares for the manufacturers.'" *Id.* (quoting *Motor & Equip. Mfrs. Ass'n* v. *EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979)).

Congress "expressed its intent to occupy the regulatory role over emissions control to the exclusion of all the states . . . except California." *Motor & Equip. Mfrs. Ass'n*, 627 F.2d at 1109.

Specifically, Section 209 of the CAA prohibits states and political subdivisions thereof from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines" and from "requir[ing] certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor engine."  42 U.S.C. § 7543(a).

Section 209 "was intended to have a broad preemptive effect" and to foreclose state-law claims "*relating to*" emissions by new vehicles.  *E.g.*, *In re Applications to Quash Subpoenas Duces Tecum Issued by the Office of the Attorney Gen. of the State of N.Y.*, 709 N.Y.S.2d 1, 8-10 (N.Y. App. Div. 1st Dep't 2000) (emphasis in original) (states cannot bring common-law claims based on violations of emissions standards or "provid[e] their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by [the CAA]"); *Sims* v. *Fla. Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1455 (11th Cir. 1989) (The express language of Section 209 "indicates Congress's intent to exclusively regulate the control of new motor vehicle emissions prior to their initial sale").  The "clear and undisputed intent of Congress" was to create a uniform federal scheme, thereby "avoiding a chaotic situation from developing where vehicle manufacturers would be subject to 50 different sets of requirements relating to emissions controls."  *In re Applications to Quash Subpoenas Duces Tecum*, 709 N.Y.S.2d at 9 (alterations, citations, and internal quotation marks omitted).

The CAA creates only one exception to total federal control of new-car emissions: California may adopt its own standards and enforcement procedures if the EPA "determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards." 42 U.S.C. § 7543(b)(1).  Thus, the EPA must review and authorize California's proposed standards and enforcement procedures to ensure that they are not

arbitrary and capricious and are consistent with federal law.  42 U.S.C. § 7543(b)(1)(A)-(C).

Because of this review and approval process, "once EPA issues a waiver for a California

emissions standard, it becomes a motor vehicle standard of the government, with the same

stature as a federal regulation."  *Green Mtn. Chrysler Plymouth Dodge Jeep* v. *Crombie*, 508

F. Supp. 2d 295, 347 (D. Vt. 2007) (noting that Congress "could not have intended that an EPA-

approved emissions reduction regulation did not have the force of a federal regulation").

Congress slightly relaxed its strict "California only" rule by enacting Section 177 of the

CAA, 42 U.S.C. § 7507.  Under Section 177, *if* the EPA grants a waiver with respect to certain

California standards, then other states may adopt and enforce standards "identical" to the EPA-

approved California standards.  42 U.S.C. § 7507.  But such states cannot adopt or enforce non-

"identical" emissions standards, "prohibit or limit, directly or indirectly, the manufacture or sale

of a new motor vehicle . . . certified in California as meeting California standards, or take any

action of any kind to create, or have the effect of creating, a motor vehicle . . . different than a

motor vehicle . . . certified in California under California standards (a 'third vehicle') or

otherwise create such a 'third vehicle.'"  *Id.*

The terms "standards," "enforcement procedures," and "enforce" in the CAA have

particular meanings.  As the Supreme Court has explained, "the standards themselves are

separate from [the] enforcement techniques," and "the distinction between standards and

accompanying enforcement procedures is a meaningful one."  *Engine Mfrs. Ass'n* v. *S. Coast Air*

*Quality Mgmt. Dist.*, 541 U.S. 246, 253 (2004); *Motor & Equipment Mfrs. Ass'n*, 627 F.2d at

1113.  The word "standards" in Section 209 of the CAA means "quantitative levels of

emissions," while "enforcement procedures" refer to "regulations involving certification or in-

use maintenance restrictions."  *Motor & Equipment Mfrs. Ass'n*, 627 F.2d at 1112.  And, an

-17-

"'attempt to enforce' a 'standard'" is a "command, accompanied by sanctions," that vehicles with particular emissions characteristics not be purchased or sold. *Engine Mfrs. Ass'n*, 541 U.S. at 255; *see also*, *e.g.*, *In re Applications to Quash Subpoenas Duces Tecum*, 709 N.Y.S.2d at 10 (under Section 209 of the CAA, states may not "provid[e] their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by Federal [emissions] law").

Alabama law also purports to authorize the Attorney General to seek an injunction against any person violating Alabama's air pollution laws or regulations. Ala. Code § 22-22A-5(19).  In this action, Alabama seeks all other "relief under state law . . . deem[ed] just and appropriate" (Compl., Prayer for Relief ¶ 3), which could encompass the injunctive relief contemplated by Section 22-22A-5(19).   Any injunction concerning the emissions or performance of Defendants' future vehicles  would effectively and impermissibly inject Alabama agencies and courts into the design of Defendants' vehicles—contrary to the careful scheme set out by federal law.

## B.   THE STATE'S CLAIMS TURN ON SUBSTANTIAL, DISPUTED ISSUES OF FEDERAL LAW THAT HAVE NATIONAL CONSEQUENCE.

Although the Plaintiff dresses its claims for relief in the garb of state law, courts look past the nominal cause of action to the litigation realities and "construe the complaint as if it raised the federal claim that actually underlies the plaintiff's [state law-claims]," *Sullivan* v. *Am. Airlines, Inc.*, 424 F.3d 267, 271-72 (2d Cir. 2005), when deciding whether federal question jurisdiction exists.   *See* Section II *supra.*   As the Supreme Court has explained, "federal jurisdiction over a state law claim will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065.  Under this standard, federal jurisdiction is properly found here.

     1.       **The Relief Sought by the Complaint Necessarily Raises Substantial and Disputed Questions About the Scope and Application of the Federal CAA.**

The relief sought by the Complaint depends upon, and otherwise implicates, questions of federal law.  Despite its efforts to shoehorn its claims into state "anti-tampering" provisions intended to regulate emissions from in-use vehicles, Plaintiff fundamentally seeks to use Alabama law to penalize emissions from, and the design of, *new* motor vehicles—in other words, Plaintiff is attempting to enforce federal and/or state emissions standards relating to new motor vehicle emissions.  Determining whether and to what extent the requested relief can be granted consistent with federal law (in particular, Section 209 of the CAA) thus would necessarily entangle an Alabama state court in questions concerning the interpretation and scope of the federal regulatory scheme implemented by the EPA.  The CAA does not—and was never intended to—authorize states other than California to bring enforcement actions or to impose penalties under their own idiosyncratic laws.  The CAA prohibits states from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles," 42 U.S.C. § 7543(a), making clear that the "regulation of motor vehicle emissions . . . [is] principally [a] federal project."  *Engine Mfrs*, 88 F.3d at 1079; *Sims,* 862 F.2d at 1455 ("[E]nforcement of the Clean Air Act before the first sale of new motor vehicles is the sole and exclusive prerogative of the federal government . . . [and]  no state shall . . . *attempt to enforce* any federal or state standard relating to the control of emissions from new motor vehicles prior to initial sale") (emphasis in original).[7]

---

[7]     In 1977, the CAA was amended to allow states to adopt and enforce emission standards for new motor vehicles—so long as those "standards are *identical* to the California standards for which a waiver has been granted for such model year."  42 U.S.C. § 7507 (emphasis added). The legislative history of this provision explains that this provision was intended only to

Permitting Alabama to impose its own enforcement procedures and penalties for new motor vehicle emissions by improperly invoking anti-tampering provisions "would conflict with the careful framework Congress adopted." *Arizona* v. *United States*, 132 S. Ct. 2492, 2502 (2012).  The Supreme "Court has recognized that a 'conflict in technique can be fully as disruptive to the system Congress enacted as conflict in overt policy.'"  *Id.* at 2505 (quoting *Amalg. Ass'n of St., Elec. Ry. & Motor Coach Emp.* v. *Lockridge*, 403 U.S. 274, 287 (1971)).  The "range and nature of those remedies that are and are not available is a fundamental part" of the comprehensive system established by Congress.  *Lockridge*, 403 U.S. at 287; *see*, *e.g.*, *Sims*, 862 F.2d at 1455 (Florida statute that "simply ensure[d] that new motor vehicles coming onto Florida's highways compl[ied] with the Clean Air Act" without imposing new or conflicting emissions standards violated CAA § 209 because CAA enforcement is the "exclusive prerogative of the federal government"); *In re Applications to Quash Subpoenas Duces Tecum*, 709 N.Y.S.2d at 10 (states cannot impose their own incremental penalties for violations of federal emissions standards, or "provid[e] their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by" the CAA).

The equitable relief provided under Alabama law also implicates federal law, because it could permanently inject the State of Alabama—and Alabama state courts—into directing and

---

[A]uthorize . . . [states to] adopt and enforce new motor vehicle emission standards which are identical to California's standards. . . . [S]trict limits are applied . . . .  The provision is *not* intended to allow States, other than California, to require additional new vehicle certification testing or *enforcement procedures* since such *testing and enforcement will be conducted under Federal and California laws*.

H.R. Rep. 95-294, at 310-11 (1977) (emphasis added).  This amendment to the CAA is not implicated in the instant action because Alabama has not adopted standards identical to California.

supervising the future design of Defendants' vehicles, effectively imposing Alabama standards throughout the United States.   *See* Ala. Code § 22-22A-5(19);  *see also* (Compl., Prayer for Relief, ¶ 3 (seeking "[o]ther relief under state law . . . deem[ed] just and appropriate")).   This plainly contravenes Congress' intent:  Congress created a uniform federal regulatory scheme because it recognized "the difficulty of subjecting motor vehicles, which readily move across state boundaries, to control by individual states."  *Engine Mfrs*, 88 F.3d at 1079; *see* 42 U.S.C. § 7543 (prohibiting states other than California from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines").

### 2.    Resolution of Plaintiff's State-Law Claims Necessarily Entails Answering Substantial Federal Questions About Compliance with Federally Approved Emissions Standards.

As described in Section I.C *supra*, the *sine qua non* of Plaintiff's claims is that certain of Defendants' new vehicles were equipped with "defeat devices"—a term defined *only* by federal law, *see* 40 C.F.R. § 86.1803-01 (defining "defeat device")—that impeded the discovery of these vehicles' excessive emissions.

Because Alabama attempts to bootstrap its anti-tampering statute to regulate the Defendants' conduct in connection with the design and emissions of new motor vehicles, determining whether Defendants' vehicles violated Alabama law, and the legal consequences for any such violation, will require the Court to construe federal new-vehicle emissions statutes and regulations.  Plaintiff cannot avoid, for example, the federal question of whether Defendants' vehicles violated federally approved emissions standards, or the separate federal question of the consequences of the vehicles containing unlawful "defeat devices," by cloaking their allegations in state-law terms.  *See*, *e.g*., *Arditi* v. *Lighthouse Int'l*, 676 F.3d 294, 298-99 (2d Cir. 2012) (a plaintiff cannot "avoid removal to federal court by declining to plead necessary federal

questions") (internal alterations and quotation marks omitted); *cf., e.g.*, Compl. ¶ 72 (d) (alleging Defendants failed to disclose illegal defeat devices in submissions to state and federal regulators and falsely represented full compliance with applicable emissions and durability standards).

Federal question jurisdiction exists where, as here, a state-law claim depends upon the interpretation or application of federal law. *See, e.g.*, *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 314-15 (federal question jurisdiction existed where validity of notice by IRS was an "essential element of [state-law] quiet title action"); *R.I. Fishermen's Alliance, Inc.* v. *R.I. Dep't of Envtl. Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009) (federal question jurisdiction exists where "answering the state-law question . . . necessarily entails answering the embedded federal question"); *Ormet*, 98 F.3d at 807 (exercise of federal jurisdiction proper where plaintiff's state-law contract claim depended on meaning of term "owner" under Clean Air Act); *League to Save Lake Tahoe* v. *B.J.K. Corp.*, 547 F.2d 1072, 1074 (9th Cir. 1976) (federal court had jurisdiction over state claim alleging violation of county building code where meaning of federal regulation was implicated); *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77, 80 (D. Mass. 2006) (removal proper where resolution of state-law claims turned on definition of "average wholesale price" in federal regulations).

### 3. The Federal Questions Raised in the Complaint Are Substantial and Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance Contemplated by the CAA.

Finally, there is a substantial federal interest in *uniformly* resolving the important issues surrounding Defendants' alleged misconduct, alleged violations of state and federal environmental laws, and the appropriate remedy for those violations. These disputed federal questions are necessarily raised in the Complaint. The federal questions raised in the State's Complaint are also substantial because they "implicate significant federal issues." *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 312.

Not only are these issues "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," *Gunn*, 133 S. Ct. at 1065, but resolving these issues in federal court better protects that balance than piecemeal litigation in state courts. Because multiple states (including Alabama, California, Maryland, Massachusetts, New Hampshire, New Mexico, New York, Oklahoma, Pennsylvania, Vermont, and Tennessee) have brought claims arising from the same nucleus of facts, this creates the risk that courts in each state will provide their own interpretations of the CAA (and allow different states to impose their own penalties for any violations they identify under their own idiosyncratic laws)—precisely the sort of "anarchic patchwork" of state and federal regulation that the CAA seeks to avoid. *Motor & Equip. Mfrs. Ass'n*, 627 F.2d at 1109.

The need for uniformity in addressing these questions is acute, as evidenced by the fact that this emissions-related controversy has resulted in hundreds of lawsuits filed across the country now coordinated in the MDL, and proposed substantial nationwide settlements under the supervision of the MDL court.  Only a fraction of the vehicles that Defendants sold or leased in the United States were sold or leased in Alabama.  (*See*, *e.g*., Compl. ¶ 5 (approximately 4,600 of the roughly 588,000 at-issue vehicles sold or leased in the United States were "sold or leased . . . in Alabama").)  "Where the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts." *Ormet*, 98 F.3d at 807.[8]

---

[8]  It is axiomatic that where federal question jurisdiction exists over any one of the claims in a removed action, the Court possesses federal jurisdiction over the case as a whole.  *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to

WHEREFORE, the case now pending in the Circuit Court of Jefferson County, Alabama, Tenth Judicial Circuit, Birmingham Division, Docket No. 01-cv-2016-903390.00, is hereby removed to the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446.

---

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *Int'l Coll. of Surgeons*, 522 U.S. at 165 ("Here, once the case was removed, the District Court had original jurisdiction over ICS' claims arising under federal law, and thus could exercise supplemental jurisdiction over the accompanying state law claims so long as those claims constitute 'other claims that . . . form part of the same case or controversy.'") (quoting 28 U.S.C. § 1367(a)).  Because at least some, if not all, of Plaintiff's claims and pleas for relief raise substantial federal questions, this entire case is removable.

Respectfully submitted,


/s/  *Harlan I. Prater, IV*
Harlan I. Prater, IV*
AL Bar No. ASB-7485-T62H
LIGHTFOOT, FRANKLIN & WHITE LLC
400 20th Street North
Birmingham, Alabama 35203
Telephone:    (205) 581-0700
Facsimile:     (205) 581-0799

*Of Counsel*
Robert J. Giuffra, Jr.**
Sharon L. Nelles**
David M.J. Rein**
William B. Monahan**

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:     (212) 558-3588

*Attorneys for Defendants Volkswagen AG,*
*Volkswagen Group of America, Inc. (d/b/a*
*Volkswagen of America, Inc.),  Audi of*
*America LLC, and Audi AG*

* Admitted in the Northern District of
Alabama
** Application for admission *pro hac vice*
forthcoming

/s/ *Adam G. Sowatzka*
Adam G. Sowatzka*
AL Bar No. 6774A60S
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA  30309
Telephone:    (404) 572-4600
Facsimile:     (404) 572-5100

*Of counsel*
Joseph Eisert**
Alexander K. Haas**

KING & SPALDING LLP
1700 Pennsylvania Ave., NW Ste 200
Washington, DC 20006
Telephone:      (202) 626-5522
Facsimile:      (202) 626-3737

*Attorneys for Defendants Dr. Ing. h.c.F. Porsche AG and Porsche Cars North America, Inc.*

* Admitted in the Northern District of Alabama
** Application for admission pro hac vice forthcoming

October 14, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of October, 2016, I electronically filed the foregoing

**NOTICE OF REMOVAL** with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to all counsel of record. I also certify that this document was

served on all counsel of record by United States Mail:

Luther J. Strange
*Attorney General*

Corey L. Maze
*Special Deputy Attorney General*

Noel S. Barnes
*Assistant Attorney General*

Robert D. Tambling
*Assistant Attorney General*

Olivia Martin
*Assistant Attorney General*

Winfield J. Sinclair
*Assistant Attorney General*

Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130

***Attorneys for the State of Alabama***


/s/ *Harlan I. Prater, IV*
Of Counsel